IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


K.F.,

        Plaintiff,                      Case No. 2:22-cv-3839

    v.                              District Judge Algenon L. Marbley
                                      Magistrate Judge Kimberly A. Jolson


CHOICE HOTELS INTERNATIONAL,
INC., *et al.*,

        Defendants.


**OPINION & ORDER**

Defendants Red Roof Inns Inc. and Red Roof Franchising LLC's Motion for a Protective Order (Doc. 125) is before the Court. The Motion is **DENIED** as it pertains to the deposition of Andrew Alexander. The Court will address the Motion as it relates to the deposition of Jay Moyer in a subsequent order.

## I.    BACKGROUND

Plaintiff filed this lawsuit in October 2022 under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). (Doc. 1). Relevant here, she alleges that she was trafficked for sex at a Red Roof-branded property in North Canton, Ohio from 2019 to March 2020. (Doc. 134 at ¶ 47). Several months ago, and in response to a directive from the Court, Defendants Red Roof Inns Inc. and Red Roof Franchising LLC ("the RRI Defendants") filed a motion for a protective order related to 18 depositions. (Doc. 99). The Court ordered the parties to confer, and the parties resolved most issues. (Docs. 114, 122). But disputes about two depositions remained—one, the Court addresses here. (Doc. 122). The Court permitted the parties to brief the matter, and it is ripe for review. (Docs. 125, 131, 132).

## II.    STANDARD

Several related concepts matter here.  Under Federal Rule of Civil Procedure 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defendant and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Rule 26 also commands that a court must limit the extent of discovery "otherwise allowed" if it determines, among other things, "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, less burdensome, or less expensive" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

In the alternative, a party from whom discovery is sought may move for a protective order to protect themselves from annoyance, embarrassment, oppression, undue burden, or undue expense.  Fed. R. Civ. P. 26(c)(1).  The party moving for a protective order must "show 'good cause' for protection from one (or more)" of these harms "'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"  *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)).  "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order."  *Id.* (citation omitted).  *See also Serrano*, 699 F.3d at 901 ("[W]hile we sometimes have considered the need for the deposition—i.e., its potential to result in relevant testimony—in reviewing the grant or denial of a protective order, we have not abandoned the requirement that one of the harms listed in Rule 26(c)(1)(A) must be specified in order to warrant a protective order.").

Additionally, mirroring Rule 26's broad reach over discovery in general, "Rule 30 provides broad access to persons for depositions."  *Anderson v. Cnty. of Wayne*, No. 2:22-CV-12828, 2024 WL 4136401, at *4 (E.D. Mich. Sept. 10, 2024); *see* Fed. R. Civ. P. 30(a) ("A party may, by oral

2

questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).") While a party may move for an order limiting or preventing a deposition, it is rare for a court to prohibit a deposition in its entirety precisely because the Federal Rules contemplate such liberal discovery principles. *See Ogle v. Columbia Gas Transmission, LLC*, No. 2:10-CV-1059, 2014 WL 6814145, at *5–6 (S.D. Ohio Dec. 3, 2014) ("In general, motions for protective orders seeking to prevent the taking of a deposition [are] regarded unfavorably by the courts." (citation omitted)); *see also Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 475 (S.D. Ohio 2014). Further, because requests to bar depositions "should be rarely granted absent extraordinary circumstances . . . the moving party bears a heavy burden." *Ogle*, 2014 WL 6814145, at *5. In explaining why the burden is so high, this Court has noted the importance of depositions to a party's trial preparation and defense. *Libertarian Party of Ohio*, 302 F.R.D. at 475 (citation omitted).

In the end, district courts have discretion over the scope of discovery. *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236; *see also Hunter v. Rhino Shield*, No. 2:18-CV-1097, 2019 WL 12240911, at *1 (S.D. Ohio Nov. 13, 2019) ("The decision to grant or deny a motion for protective order 'falls within the broad discretion of the district court managing the case.'" (quoting *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988)).

## III. DISCUSSION

Plaintiff seeks to depose Andrew Alexander because he is a "key custodian and decisionmaker" for Red Roof. (Doc. 131 at 1). He served as Red Roof's general counsel from 2007 until 2013, and as president from 2009 until 2020. (Doc. 125 at 2). In this litigation, he has produced 1,690 "universal corporate documents," the vast majority of which the RRI Defendants did not designate as privileged. (Doc. 131 at 1). Those documents reveal he engaged directly in

3

conversations "related to human trafficking problems at Red Roof," and others show he "resisted training and changes in policy related to sex trafficking out of fear it would negatively affect occupancy rate." (*Id.* at 1–2).  Additionally, Mr. Alexander has made several public statements about human trafficking at Red Roof.  (*Id.* at 2).  Plaintiff's counsel intends to ask him about these documents, decisions, and statements.

The RRI Defendants offer several reasons why Mr. Alexander should not be deposed, primarily relying on his former Red Roof positions and the other discovery available to Plaintiff. (Doc. 125).  The Court first considers their arguments under Rule 26(b) before turning to Rule 26(c).

### A.      Rule 26(b)(2)(C)

Taken as a whole, the RRI Defendants' Motion contends that Mr. Alexander's deposition should be limited under Rule 26(b) because:  (1) Mr. Alexander is protected by his executive status; (2) his testimony would be duplicative; (3) the information he can provide may be obtained by other less burdensome means; (4) his testimony would be irrelevant; and (5) his testimony would be privileged.  (*Id.* at 2–6).

Beginning with Mr. Alexander's executive status, the RRI Defendants submit the principles underlying the "apex doctrine" should apply here.  (Doc. 125 at 5; Doc. 132 at 5–6).  The apex doctrine "bars the deposition of high-level executives absent a showing of their 'unique personal knowledge' of relevant facts."  *Serrano*, 699 F.3d at 900.  The Sixth Circuit has not endorsed a standalone apex doctrine.  *Id.* (finding a district court erred in relying solely on the apex doctrine to grant a protective order and concluding the court must analyze a protective order request against the harms identified in Rule 26(c)(1)).  The Court follows Sixth Circuit guidance here and rejects the RRI Defendants' request to do otherwise.

Next, the RRI Defendants say that Mr. Alexander's deposition would be duplicative because Plaintiff has access to the discovery by other means. (Doc. 125 at 2–3, 5–6). In essence, they argue that because Plaintiff took a 30(b)(6) deposition and plans to take several other depositions of Red Roof corporate personnel, Mr. Alexander's deposition is superfluous. (*Id.*). Importantly though, this other discovery does not appear to cover the topics Plaintiff intends to ask Mr. Alexander about: namely, his personal files, his personal decisions, and his public statements. (Doc. 131 at 3–4). In other words, Mr. Alexander's deposition is not obviously duplicative of other discovery, and Plaintiff seemingly cannot obtain the same information in a less burdensome way. At the same time, Plaintiff must respect the line between fact deponents and 30(b)(6) deponents; topics covered in the 30(b)(6) deposition or topics justifiably considered general corporate discovery are out of bounds. (*See* Doc. 114 at 3; Doc. 118 at 19).

The Court is also unpersuaded that Mr. Alexander's deposition would cover only irrelevant topics. Notably, the Court need not reach the RRI's Defendant's arguments about the elements of the TVPRA, because "[t]he concept of relevance during discovery is necessarily broader than at trial." *Guinn v. Mount Carmel Health Sys.*, No. 2:09-cv-226, 2010 WL 2927254, at *3 (S.D. Ohio July 23, 2010). Rule 26's plain language allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," even if that evidence is not admissible at trial. Fed. R. Civ. P. 26(b)(1). The Court is satisfied here that Mr. Alexander's testimony about documents he produced, his personal decisions reflected in those documents, or public statements he made about sex trafficking hew closely enough to the claims and defenses raised in this case for the purposes of Rule 26.

Finally, the Court declines to foreclose Mr. Alexander's deposition based on the possibility that Plaintiff will ask questions for which Mr. Alexander will assert a valid privilege. The better

5

course is to allow the deposition to proceed and for Mr. Alexander's counsel to instruct him not to answer should issues of privilege arise. The parties then may attempt to work through any challenges to an invocation of privilege themselves before coming to the Court for intervention. In sum, the Court is not persuaded that Mr. Alexander's deposition should be barred or limited under Rule 26(b).

Nonetheless, the Red Roof Defendants' Motion also argues extensively that the Court should protect Mr. Alexander from being deposed under Rule 26(c) because he is Red Roof's former counsel.

### B. The *Shelton* Test

While the Court normally would begin and end its protective order analysis with the Rule 26(c) factors, the RRI Defendants submit that the Court should, instead, apply the principles concerning attorney depositions set forth in *Shelton v. American Motors Corporation*, 805 F.2d 1323, 1327 (8th Cir. 1986). (Doc. 125 at 2–6).

Broadly speaking, lawyers are not immune from sitting for depositions simply by virtue of their profession. *See Shelton*, 805 F.2d at 1327. To the contrary, "the Federal Rules of Civil Procedure create no special presumptions or exceptions for lawyers, or anyone else[.]" *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 19 (D.D.C. 2002). This is because, as previously noted, "the Federal Rules presume openness in discovery[.]" *Id.* To allow otherwise, "the presumption of discoverability in the Federal Rules would be turned upside down," and it would allow a party "to immunize themselves from discovery on key issues, by knowingly and strategically placing persons who happen to be attorneys in positions where they perform critical [functions]." *Id.*

That said, the Eighth Circuit in *Shelton* considered whether to allow a party to depose a corporation's litigation attorney to discern whether she answered discovery requests truthfully. 805

6

F.2d at 1325–28.  The court opined that because of the would-be deponent's attorney status, the party seeking the deposition had the burden to show the deposition should move forward.  *Id.* at 1327.  The court reasoned this burden shift would adequately address two key concerns relevant when a deponent is also "opposing counsel": Preventing the disruption of the adversarial system through harassment of opposing counsel and reducing the burden and cost of litigation arising from collateral issues of privilege and attorney work product.  *Id.*  Consequently, the court created what would come to be known as the *Shelton* test and required the party seeking the attorney deposition to demonstrate "(1) no other means exists to obtain the information [sought by the discovery request]; (2) the information is relevant and nonprivileged . . .; and (3) the information is crucial to the preparation of the case."  *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 310–11 (S.D. Ohio 2010) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002)); *see also Shelton*, 805 F.2d at 1327.

While the Sixth Circuit seemingly has endorsed the lower courts' application of the *Shelton* test in certain circumstances, *see, e.g.*, *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 573–74 (6th Cir. 2015), not every case involving an attorney deponent is the same.  In fact, "when a party seeks to depose a lawyer who is not serving as opposing counsel or who is not currently involved in the litigation, the court may decline to apply *Shelton*."  *See Abington Emerson Cap., LLC v. Landash Corp.*, No. 2:17-CV-143, 2019 WL 3779779, at *2 (S.D. Ohio Aug. 12, 2019).  This makes sense because the concerns animating the Court in *Shelton*, detailed above, are not necessarily present in a case where the lawyer to be deposed is a party's former in-house counsel who has not been involved in the litigation at issue.  *See, e.g.*, *id.* at *2–3; *Ogle*, 2014 WL 6814145, at *6 (noting that the "fact alone" that plaintiff sought to depose former in-house counsel was "not determinative of *Shelton's* applicability"); *Hilton Hotels Corp. v. Dunnet*, No. 00-2852-GV, 2001

7

WL 1910057, at *3 (W.D. Tenn. Sept. 5, 2001) ("As former in house-counsel, the rationale behind the Shelton burden-shifting approach is not necessarily applicable[.]"); *Kattawar v. Logistics & Distribution Servs., Inc.*, No. 214CV02701STACGC, 2015 WL 11752984, at *6 (W.D. Tenn. Mar. 27, 2015) (declining to apply *Shelton* where the requests at issue did not involve discovery sought from "a current or former litigation counsel that has worked or is working on the litigation before the Court"); *see also Devlyne v. Lassen Mun. Util. Dist.*, No. CIV. S-10-0286 MCE, 2011 WL 4905672, at *2 (E.D. Cal. Oct. 14, 2011) ("Simply being a former general counsel for a party is insufficient to bring one under the protection of the Shelton rule"); *Porter v. White*, No. 8:04-CV-367-T-17MSS, 2005 WL 8160135, at *2–3 (M.D. Fla. Nov. 14, 2005) (finding that the rationale of *Shelton* did not apply to former counsel because he was not involved in the current litigation); *cf. Alomari v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-00613, 2013 WL 5180811, at *5 (S.D. Ohio Sept. 13, 2013) (applying *Shelton* where, among other things, the attorneys the plaintiff sought to depose were "involved" in the dispute "well before it blossomed into a lawsuit"), *objections overruled*, No. 2:11-CV-00613, 2014 WL 12651191 (S.D. Ohio June 19, 2014). The same is true here.

As for the first *Shelton* concern, nothing in the record persuades the Court that Plaintiff's request amounts to harassment, particularly because Mr. Alexander is not a counsel of record here. *See, e.g.*, *Abington Emerson Cap.*, 2019 WL 3779779, at *3 (finding no harassment, in part, because the counsel to be deposed was not "opposing counsel in [the] case"); *Porter*, 2005 WL 8160135, at *3 (noting that because counsel was not "involved in the current litigation, the Court need not concern itself with that portion of the *Shelton* rationale concerned with the harassment and resulting distraction of opposing counsel); *see also Ogle*, 2014 WL 6814145, at *6 (finding a deposition request was not harassing where the defendant provided no evidence of such). Additionally,

8

nothing in the record suggests Mr. Alexander ever worked on this case, in contrast to other TVPRA cases where this Court applied *Shelton*. *Cf. A.W.*, 2024 WL 5041027, at *2 (applying *Shelton* where the general counsel at issue "oversaw" the litigation at issue and where the plaintiff did not argue the test was inapplicable).

More still, Mr. Alexander has not been Red Roof's general counsel since 2013. (Doc. 125 at 2). And Mr. Alexander does not "possess unique facts" about Plaintiff's claims. (*Id.* at 5). Even if, as the RRI Defendants say, Mr. Alexander was involved in "provid[ing] evaluations and advice on legal compliance, policy formulation, and litigation exposure" to Red Roof (*id.* at 2), there are no specific representations that Mr. Alexander advised Red Roof about "similar litigation or . . . helped develop [Red Roof's] defense strategy" as might tip the scales. *Williams v. Wellston City Sch. Dist.*, No. 2:09-CV-566, 2010 WL 4513818, at *5 (S.D. Ohio Nov. 2, 2010). All told, because Mr. Alexander has no relationship to the current litigation, the Court need not be concerned that Plaintiff seeks only to harass him or that his deposition will interfere with his ability to focus on this matter.

Further, in considering the second *Shelton* concern, the Court is not overly troubled with the possibility of collateral issues of privilege and attorney work product that might increase the burden and cost of litigation here. Plaintiff represents—and will be held to her representations—that she seeks to depose Mr. Alexander about matters unrelated to litigation strategies. Her counsel instead wants to probe him about unprivileged documents he produced and his own public statements and conduct. (Doc. 131 at 3); *see Myers v. Asset Acceptance, LLC*, No. 2:09-CV-696, 2010 WL 11492862, at *3 (S.D. Ohio Apr. 20, 2010) (declining to apply *Shelton* where the plaintiff sought to depose an attorney on matters "separate and apart from Defendants' litigation strategy" in the case). Even more, Plaintiff seems to want to depose Mr. Alexander about his actions postdating his

9

time as general counsel.  While the Court does not foreclose the possibility that Mr. Alexander may invoke privilege in response to some of Plaintiff's questions, it does not appear that Plaintiff intends to explore matters protected by work-product or attorney-client privilege such that may result in extended pretrial delays.

As a final argument, the RRI Defendants contend Mr. Alexander's prior legal advice to Red Roof on the topics of sex trafficking policies and procedures is enough for *Shelton* to kick in.  Two problems.  First, this supposition about Mr. Alexander's former work is vague and does not justify imposing "a reversal of the usual procedure which places the burden of persuasion on the party seeking protection."  *See Libertarian Party of Ohio*, 33 F. Supp. 3d at 927 ("[T]he burden of producing evidence to show what role counsel actually plays in a case . . . should be on the party asserting that *Shelton* applies, since that party is in the best position to know exactly what counsel's role was or is.").  Second, the RRI Defendants overread in-circuit caselaw and ignore those courts' reliance on the other considerations discussed above.  *See, e.g.*, *Alomari*, 626 F. App'x at 573–74 (affirming the district court's application of *Shelton* where the attorneys at issue assisted an investigator—pre-litigation—in obtaining public records to aid in her investigation of the plaintiff at issue); *Westgate Resorts, Ltd v. Wesley Fin. Grp., LLC*, No. 3:20-CV-00599, 2021 WL 6882148, at *3–4 (M.D. Tenn. Oct. 4, 2021) (applying *Shelton* where the former in-house counsel at issue had a "central role in ensuring continuity in litigation strategy" following transfer of a case and a change in trial counsel); *see also Shelton*, 805 F.2d at 1325, 1327 (applying the burden shifting framework where the attorney at issue was in-house counsel "assigned specifically to the case at bar"); *Quarrie v. Wells*, No. CV 17-350 MV/GBW, 2020 WL 7385730, at *7 (D.N.M. Dec. 16, 2020) (upholding the application of *Shelton* where the attorney, though retired, had knowledge of the case at issue from her role as an attorney at the firm that represented the defendants).

10

At base, courts apply the *Shelton* test sparingly.  On this record, the Court is unpersuaded that the circumstances surrounding Mr. Alexander's potential deposition justify departure from the usual analysis under Rule 26.

### C.    Rule 26(c)(1) Factors

If *Shelton* does not apply, the familiar Rule 26(c)(1) controls.  The RRI Defendants devote their Motion to analysis under *Shelton*, and their arguments under Rule 26(c)(1) are wanting.  As noted above, for the Court to issue a protective order, the Sixth Circuit requires the moving party show good cause for protection from one of the harms listed in Rule 26(c)(1) "with a particular and specific demonstration of fact."  *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236.  The RRI Defendants do not mention the enumerated Rule 26(c)(1) factors in their Motion, let alone make a particularized showing of harms.  (*See generally* Doc. 125).  The closest they come is arguing Plaintiff can obtain the information Mr. Alexander can provide through less burdensome means. (*Id.* at 5).  But "less burdensome" is the language of Rule 26(b)(2)(C), not Rule 26(c)(1).  Plus, as explained, the discovery Plaintiff seeks is available only from Mr. Alexander.

For these reasons, the RRI Defendants have not met their burden to demonstrate good cause for a protective order, and their Motion with respect to Mr. Alexander is **DENIED**.  The parties are **DIRECTED** to confer and notify the Court **by July 31, 2026**, as to when Mr. Alexander's deposition will be conducted.  It must be concluded by **August 31, 2026**.

***

Two final notes.  First, as alluded to, this Order does not address the RRI Defendants' request that the Court prevent Plaintiff from deposing Jay Moyer.  The Court will address his deposition in a subsequent Order.

11

Second, the parties have been working through a dispute about cross-noticing depositions. (*See, e.g.*, Doc. 140).  It appears they resolved their issues as for all individuals except Mr. Alexander and Mr. Moyer.  (*Id.*).  The parties are **ORDERED** to confer on whether the cross-noticing issue remains live for Mr. Alexander following this Opinion and Order.  They are **ORDERED** to file a joint status report **in any case where this issue is relevant within seven (7) days**, detailing the outcome of that discussion.

## IV.     CONCLUSION

For the forgoing reasons, the Court **DENIES** the RRI Defendants' Motion for a Protective Order as it pertains to Mr. Alexander.  (Doc. 125).  Plaintiff may move forward with the deposition. The parties are **DIRECTED** to confer and notify the Court **by July 31, 2026**, as to when it will be conducted.  Finally, the parties are **ORDERED** to file the joint status report described above **within seven (7) days**.


        IT IS SO ORDERED.


Date: July 22, 2026                          *s/* Kimberly A. Jolson
                                             KIMBERLY A. JOLSON
                                             UNITED STATES MAGISTRATE JUDGE